**In re Richard Marshall TAYLOR, Jr., Debtor.**

**Bankruptcy No. 83–01344–A.**

United States Bankruptcy Court, E.D. Virginia, Alexandria Division.

Nov. 18, 1985.

Diana M. Perkinson, Perkinson & Perkinson, Roanoke, Va., for debtor.

Frank W. Somerville, Somerville, Moore & Somerville, Ltd., Orange, Va., for Reynolds Pontiac-Cadillac-GMC-Buick, Inc.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

Richard M. Taylor, Jr. ("debtor") filed a petition for relief under Chapter 7 of the Bankruptcy Reform Act of 1978 ("the Code") on November 18, 1983. The notice sent to creditors pursuant to Bankruptcy Rule 2002 described the case as a "no-asset" case in that the schedules revealed no assets from which a dividend could be paid. Creditors were requested not to file claims. Bankruptcy Rule 2002(e) provides that in a no-asset case, the notice to creditors may inform creditors that the filing of claims is unnecessary "and that if sufficient assets become available for the payment of a dividend, further notice will be given for the filing of claims." Debtor was granted a discharge by this Court on February 21, 1984.

On April 26, 1984, debtor filed an amendment to his Schedule A–3. By doing so, debtor sought to include within his discharge a disputed debt for $4,000.00 to an "inadvertently omitted" creditor, Reynolds Pontiac-Cadillac-GMC-Buick, Inc. ("Reynolds"). This debt arose from the lease of a Pontiac station wagon to debtor by Reynolds. Debtor and Reynolds had executed a twenty-four month lease on December 14, 1979, and they subsequently entered into an agreement effective November 1, 1981 to continue the lease on a month-to-month basis after its scheduled expiration. Debtor made monthly payments through December 1983. He returned the car to Reynolds on February 29 or March 1, 1984.

Reynolds filed an objection to debtor's amendment on May 14, 1984, claiming that debtor's failure to schedule it as a creditor as required by section 521(1) of the Code was not inadvertent and was prejudicial to

Reynolds. Reynolds claimed further that since it did not receive knowledge of debtor's bankruptcy petition in time to file a timely proof of claim, its debt should be nondischargeable under section 523(a)(3).

At the hearing, Reynolds contended that debtor was two months behind in his monthly payments of $314.00 when he returned the vehicle to Reynolds' place of business. In addition, Reynolds claimed that debtor was liable under the lease for $2,922.06 in damages to the vehicle. According to Thomas P. Reynolds, Reynolds' secretary-treasurer, an unascertained amount of this damage occurred in December 1983, the month after debtor's petition was filed.

Debtor testified that he omitted Reynolds from his schedules because of his understanding that monthly bills were not to be listed unless in arrears. Debtor considered the month-to-month lease payment a monthly bill. Debtor said that he returned the vehicle to Reynolds on February 29, 1984 because he could no longer afford the monthly payments.

■■■ The Court finds that debtor was clearly entitled to amend his Schedule A–3 to include Reynolds as a creditor. A schedule in a voluntary Chapter 7 case "may be amended by the debtor as a matter of course at any time before the case is closed." Bankr.R. 1009. Although amendments are allowed as a matter of course, newly added debts are not discharged as a matter of right. The effect of debtor's amendment on the dischargeability of Reynolds' claim is governed by section 523(a)(3) of the Code. Bankr.R. 1009 advisory committee note.

Section 523(a)(3) states:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—         .

(A) if such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

(B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request....

In its objection to debtor's amendment, Reynolds asserts that its claim should be nondischargeable under section 523(a)(3) because it had no notice or actual knowledge of the case until after March 1, 1984, its claim was not scheduled under section 521(1) in time to permit timely filing of a proof of claim, and it was prejudiced in that it was unable to participate in the creditors' meeting and unable to take steps to protect its interest in the vehicle leased to the debtor. Even though Reynolds alleges prejudice, it argues that section 523(a)(3) does not require it to prove actual prejudice.

Debtor concedes that Reynolds had no notice or actual knowledge of his bankruptcy case until March 1984. Debtor denies, however, that Reynolds' claim is nondischargeable under section 523(a)(3). Debtor contends that Reynolds received notice in time to file a timely proof of claim under section 523(a)(2)(A) and considers this issue dispositive of Reynolds' objection.

Debtor appears correct in characterizing this case as one arising solely under section 523(a)(3)(A). Reynolds has not disclosed plans to file a complaint to determine the dischargeability of a debt under sections 523(a)(2), 523(a)(4), or 523(a)(6) and has not invoked section 523(a)(3)(B) in its arguments. The only issue before this Court, then, is whether Reynolds received notice of debtor's petition in time to file a timely proof of claim.

Bankruptcy Rule 3002(c) provides that creditors generally must file proofs of claim "within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code." In debtor's case, the first date set for the meeting of creditors was December 15, 1983. If his case had been one in which a dividend to creditors appeared possible, the deadline for filing claims would have fallen on March 14, 1984, giving Reynolds approximately two weeks from the day on which it learned of debtor's bankruptcy in which to file a claim. Whether approximately two weeks is sufficient notice under those circumstances is an issue not before this Court because the claim-filing period in this case is not keyed to the first date set for the section 341 meeting. Since debtor's case was described in the notice to creditors as a no-asset case pursuant to Rule 2002(e), informing creditors that no claims needed to be filed at that time, the ninety-day period in which to file claims never began running—the trustee had not notified the Court that the payment of a dividend to creditors appeared possible and the clerk had not notified creditors of that possibility.[1] Bankr.R. 3002(c)(5).

Because the conditions precedent for the accrual of the ninety-day claim-filing period have not occurred, the time for filing proofs of claim has not expired within the meaning of section 523(a)(2)(A). *In re Rosinski*, 759 F.2d 539, 542 (6th Cir.1985); *In re Stark*, 717 F.2d 322, 324 (7th Cir.1983); *In re Grubbs*, 45 B.R. 674, 675 (Bankr.W. D.Va.1985); *In re Ratliff*, 27 B.R. 465, 467 (Bankr.E.D.Va.1983). *Cf. In re Laczko*, 37 B.R. 676 (Bankr. 9th Cir.1984) (in a no-asset case in which the notice to creditors actually announces a deadline for filing claims, debtor must amend his schedules before the deadline or forfeit his right to a discharge with respect to debts sought to be added to the schedules).

Section 523(a)(3)(A) requires only that debtors schedule their debts in time for their creditors to file seasonable proofs of claim. This requirement was satisfied by the instant debtor. In enacting section 523(a)(3), Congress specifically intended to overrule the case Reynolds principally relies on, *Birkett v. Columbia Bank*, 195 U.S. 345, 25 S.Ct. 38, 49 L.Ed. 231 (1904). *In re Barrett*, 24 B.R. 682, 684 (Bankr.M. D.Tenn.1982); *In re Gannon*, 25 B.R. 360, 362 (Bankr.D.N.J.1982); 3 *Collier on Bankruptcy* ¶ 523.13[5], at 523–90 to 523–91 (15th ed. 1985). In *Birkett*, the Supreme Court refused to discharge an unscheduled debt when the creditor, like Reynolds, learned of the bankruptcy after the debtor's discharge. 195 U.S. at 346, 350–51. Although the creditor had received notice in time to move to revoke the discharge and to prove its claim, notice came too late to allow "participation in the administration of the affairs of the estate." *Id.* at 350, 25 S.Ct. at 39.

---

**1.** The current Bankruptcy Rules, including Rules 2002 and 3002, became applicable on August 1, 1983, over three months before debtor filed his petition on November 18, 1983. *See* 1 *Collier on Bankruptcy* ¶ 3.04[2][a], at 3–135 (15th ed. 1985). Because the current Rules apply to this proceeding, two of debtor's arguments become moot. In the first of these arguments, debtor claims that his debt to Reynolds should be dischargeable because Reynolds learned of debtor's petition well within the six-month claim-filing period allowed by Bankruptcy Rule 302(e)(4). Rule 302 was superseded by Rule 3002 on August 1, 1983. Thus, even if the claim-filing period had begun to run in this no-asset case, the period would have expired ninety days, not six months, from the date set for the first creditors' meeting. Bankr.R. 3002(c)(5).

Debtor's argument that his case presents "exceptional circumstances" also has been mooted by legislative change. The exceptional circumstances doctrine, adopted by the Eastern District of Virginia in *In re Souras*, 19 B.R. 798, 801 (Bankr.E.D.Va.1982), was developed in equity to allow a debtor to amend his schedules after the claim-filing period had expired. *Robinson v. Mann*, 339 F.2d 547 (5th Cir.1964). Since Bankruptcy Rule 1009 was adopted, allowing amendment as of right at any time prior to the closing of the case, the exceptional circumstances doctrine has become relevant only when the debtor seeks to re-open his case to include an additional debt within his discharge. *See, e.g., In re Mitchell*, 47 B.R. 209 (Bankr.N.D.Texas 1985); *In re Johnson*, 46 B.R. 52 (Bankr.E.D.Wash. 1985); *In re Souras*, 19 B.R. 798 (Bankr.E.D.Va. 1982). The case *sub judice* did not need to be re-opened because it had never been closed.

With *Birkett* legislatively overruled by section 523(a)(3), a creditor may prevent a debtor from amending his schedule to bring the creditor within the discharge only if the creditor can show that the debtor's failure to list the creditor on the original schedule was (1) intentional or fraudulent, or (2) prejudicial to the creditor. *In re Rosinski, supra,* 759 F.2d at 541. *See also In re Baitcher,* 36 B.R. 588, 591 (Bankr.N.D.Ga.1983) (prejudice required under section 523(a)(3)); *In re Jones,* 22 B.R. 416, 417 (Bankr.M.D.Fla.1982) (prejudice required under section 523(a)(3)); *In re Souras,* 19 B.R. 798, 801 (Bankr.E.D.Va. 1982) (amendments to schedules allowed unless creditor will suffer harm). Reynolds does not allege that its omission from debtor's schedule A–3 was fraudulent, but claims that it was intentional "in that [debtor] continued to operate the automobile which was the subject of the lease agreement" and "continued to make payments under the lease agreement following the filing of his Bankruptcy Petition." Debtor explains Reynolds' omission as the result of his erroneous belief that the month-to-month lease with Reynolds, which was not in arrears when debtor filed his petition, was not required to be listed. Accordingly, the Court finds that debtor's omission was not intentional.

Although attempting to argue that prejudice is not required under section 523(a)(3), Reynolds argues in the alternative that prejudice did actually result from the omission of its debt from debtor's original Schedule A–3. Prejudice allegedly resulted from:

(1) the continued use of the vehicle by debtor post petition;

(2) the possible damage incurred by the vehicle post petition; and

(3) the change in the car-model year post petition, resulting in a decrease in the vehicle's market value.[2]

Assuming that Reynolds had been given timely notice of the filing of the petition, the hurdle presented by section 362's automatic stay would have barred it from taking extra-judicial action to terminate the lease or repossess the vehicle. Section 362(a). The month-to-month lease would have become property of the estate. Section 541(a). As an unexpired lease, it would have continued in effect unless the Chapter 7 trustee chose to reject it, and the trustee would have had up to sixty days in order to make his decision. Section 365(d)(1).

In light of the foregoing Code sections and Reynold's failure to offer proof of specific money damages resulting from debtor's failure to schedule Reynolds as a creditor, Reynolds' harm is speculative and therefore insufficient to deny debtor a discharge. *See In re Souras, supra,* 19 B.R. at 801.

Reynolds has not claimed that its omission from debtor's Schedule A–3 prevented it from filing a timely complaint under sections 523(a)(2), 523(a)(4), or 523(a)(6) of the Code to determine the dischargeability of a debt. If Reynolds had made such a claim to this Court, its objection to debtor's amendment would have rested on more solid ground. At the time of debtor's amendment, April 26, 1984, the date for filing complaints arising under sections 523(a)(2), (4), or (6) (not later than sixty days after the first date set for the section 341 hearing, which was December 15, 1983) had passed. *See* 3 *Collier on Bankruptcy* ¶ 523.13[5][b], at 523–93 (15th ed. 1985). The prejudice to Reynolds would have been clear. But the prejudice to Reynolds is not clear from its actual allegations and proof. Consequently, debtor's amendment to his schedules was proper and his debt to Reynolds is dischargeable.

---

**2.** In its Objection to Amendment, Reynolds alleged prejudice in that it was unable to attend the section 341 creditors' meeting and participate in the election of a trustee. Reynolds did

not pursue this allegation at trial or in its memorandum of law, apparently having decided to abandon it.