In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1186

IN RE:

  JAMES G. HERMAN,

*Debtor-Appellee.*


APPEAL OF: JOHN P. MILLER

---

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 3:12-cv-50251 — **Philip G. Reinhard**, *Judge.*

---

ARGUED SEPTEMBER 20, 2013 — DECIDED NOVEMBER 26, 2013

---

Before WOOD, *Chief Judge*, and BAUER and FLAUM, *Circuit Judges.*

BAUER, *Circuit Judge.* Debtor-Appellee James G. Herman filed for bankruptcy in a Chapter 7 proceeding on June 4, 2010. On Herman's bankruptcy petition, Appellant John P. Miller was listed as a creditor, but with the address "c/o Thomas Stilp, Attorney" at Stilp's office address. The notice of bankruptcy was delivered to Stilp's office in June 2010, but Stilp did not receive the notice or advise Miller about the bankruptcy until August 31, 2010. Miller took no immediate action. The

bankruptcy court entered a discharge order on September 27, 2010, and closed Herman's bankruptcy case several weeks later. Miller filed a motion to reopen the bankruptcy case on September 26, 2011, claiming that he was never given proper notice of the proceeding. The bankruptcy court denied Miller's motion. On appeal, the district court affirmed the order of the bankruptcy court finding that Miller had been properly served when the notice was delivered to attorney Stilp. We affirm.

## I.  BACKGROUND

The parties in this case have a long history of litigation preceding Herman's bankruptcy petition. Beginning in 2005, attorney Thomas Stilp ("Stilp") represented John P. Miller ("Miller") in a number of proceedings filed in state and federal court concerning a dispute over the construction of Miller's house by contractor James G. Herman ("Herman"). The causes of action included statutory fraud and breaches of warranty about the quality, condition, and construction of Miller's home, involving issues with the installation of Pella windows.

On May 10, 2010, the U.S. District Court for the Northern District of Illinois dismissed Miller's case; the court declined to exercise supplemental jurisdiction over the matter, but stated that Miller was free to refile the case in a state law forum if he chose. Stilp promptly apprised Miller of the district court decision and recommended that Miller terminate the action based on the state law at the time. Miller told Stilp that he would need time to consider whether to refile the case.

On June 4, 2010, Herman and his co-debtor spouse Rita M. Herman filed a Chapter 7 bankruptcy petition in the Northern District of Illinois. The first meeting of creditors was scheduled

for July 26, 2010. The final deadline for creditors to file objections to discharge of a debt or complaints to determine the dischargeability of a debt was set for September 24, 2010. Herman's bankruptcy attorney, Richard Jones ("Jones"), prepared the schedules listing the addresses of all creditors. Miller was listed as a creditor on the bankruptcy schedules and creditor matrix, but his address was listed as "c/o Thomas Stilp, Attorney" at Stilp's office address. Notice of the bankruptcy was delivered to Stilp's office in June 2010 but was routed to another attorney in the firm. Neither Stilp nor Miller was sent, or informed of, the notice that was delivered to Stilp's office.

In August 2010, Miller informed Stilp that he wanted to refile his complaint against Herman. Stilp's firm began researching the matter and discovered that Herman had filed for bankruptcy protection. On August 31, 2010, Stilp sent an email to Miller notifying him of Herman's bankruptcy petition and advising him that the firm would be unable to file suit against Herman due to the bankruptcy protection. Miller took no immediate action regarding Herman's bankruptcy petition.

Less than a month later, the bankruptcy court entered a discharge order dated September 27, 2010. Meanwhile, Stilp continued to prepare a separate action for Miller to be filed in the Circuit Court of Cook County against Pella Corporation regarding the same windows installed in Miller's home.

On September 26, 2011, nearly thirteen months after he learned of Herman's bankruptcy petition, Miller filed a motion to reopen the case pursuant to 11 U.S.C. § 727(a)(4)(A) (dealing with an objection to discharge if such discharge was obtained

through a fraudulent oath or account) and 11 U.S.C. § 523(a) (concerning complaints to determine the dischargeability of debt). Miller sought to reopen the bankruptcy and have his former claims against Herman declared nondischargeable. Several hearings were held, including a full evidentiary hearing involving the oral testimony of Stilp, Herman, and Miller. The bankruptcy court made the factual finding that the notice provided to Stilp was imputed to Miller and denied Miller's motion to reopen on March 14, 2012. On appeal, the U.S. District Court for the Northern District of Illinois affirmed the bankruptcy court's decision. Miller timely appealed to this Court.

Miller argues that notice of Herman's bankruptcy was improper, untimely, and should have been sent directly to Miller's home. Miller contends that because he did not receive proper notice, he is entitled to reopen the bankruptcy case and pursue revocation of the discharge of the debt and a nondischargeability complaint.

## II. DISCUSSION

The Seventh Circuit reviews a district court's decision to affirm the decision of the bankruptcy court *de novo*, but the denial of a motion to reopen a closed bankruptcy case is reviewed for abuse of discretion. *Redmon v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010); *In re Ingersoll, Inc.*, 562 F.3d 856, 863 (7th Cir. 2009). When examining a bankruptcy court's findings of fact, this Court applies the same "clear error" standard as the district court. *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the

entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) (internal quotations omitted). The decision to reopen a bankruptcy case is within the broad discretion given to the bankruptcy court and an order denying a motion to reopen is entitled to deference. *In re Bianucci*, 4 F.3d 526, 528 (7th Cir. 1993); *Ingersoll*, 562 F.3d at 863.

Miller's appeal relies on 11 U.S.C. §§ 727(a)(4)(A) and (d)(1) as well as various subsections of § 523(a). Miller first alleges that revocation of discharge is proper under § 727(a) because Herman made a "false oath or account" by failing to schedule Miller as a creditor. The bankruptcy court properly rejected the argument as "clearly false" because the details in the record show that Miller was in fact listed as a creditor in Schedule F of Herman's bankruptcy petition. Additionally, while Miller viewed § 727(a) as grounds for a revocation of discharge, it actually establishes grounds to *object* to a discharge. The deadline to file objections to the discharge of debt in Herman's bankruptcy case was scheduled for September 24, 2010. Miller did not file his objection until over one year later on September 26, 2011. Therefore, the court properly found that Miller's motion under § 727(a)(4)(A) was untimely.

Alternatively, Miller points to § 727(d)(1) as a basis for revocation of the discharge order. Section 727(d)(1) allows a court to grant discharge unless it was "obtained through the fraud of the debtor." 11 U.S.C. § 727(d)(1). The creditor may request a revocation under subsection (d)(1) "within one year after such discharge is granted." 11 U.S.C. § 727(e)(1). While Miller's claim was made just under one year from the discharge, Miller nonetheless failed to establish that Herman

obtained the discharge of the debt through fraud. This Court has held that § 727(d)(1) relief is "appropriate when the debtor procured his discharge through fraud, and the party requesting revocation did not learn of the fraud until *after* the discharge was granted." *Smith*, 582 F.3d at 775 (emphasis added). The fraudulent behavior Miller alleges surrounds the construction of his home; that occurred years before Herman filed for bankruptcy and is not connected to the discharge itself. Since the alleged fraud occurred years before Herman's bankruptcy and does not concern the discharge of debt, Miller's claim under 11 U.S.C. § 727(d)(1) also fails.

The remaining issue, which is the primary subject of this appeal, concerns notice. In his appeal, Miller argues that Herman's failure to provide notice to Miller at his home address prevented him from "timely presenting a claim and meaningfully participating in the bankruptcy proceeding." Miller contends that he did not take action prior to the discharge order because he did not have proper notice and was therefore "not aware of what action was available to take or what steps he should follow to preserver [sic] his rights." The subsections of 11 U.S.C. § 523(a) provide for the exemption of a discharge if a creditor did not have notice or actual knowledge of the bankruptcy in time to file a nondischargeability complaint. Specifically, § 523(a)(3)(B) of the Bankruptcy Code provides that a debt will be exempt from discharge if a creditor is "neither listed nor scheduled … in time to permit … timely request for dischargeability … unless such creditor had notice or actual knowledge of the case at the time for such timely filing and request." Notice requires that a debtor use "reasonable diligence" under the circumstances to inform a creditor of

the bankruptcy petition, but "a bankrupt is not required to exhaust every possible avenue of information in ascertaining a creditor's address." *In re Faden*, 96 F.3d 792, 796 (5th Cir. 1996).

Miller's argument is contrary to the undisputed facts of this case. Miller received actual notice of Herman's bankruptcy on August 31, 2010. He had twenty-four days to file any motions or objections concerning dischargeability before the September 24, 2010 deadline. Although this Court's precedent indicates that less than one month of actual notice may not be sufficient notice, no bright-line rule has been established. *Smith*, 582 F.3d at 780 ("the minimal notice … did not give the plaintiffs a reasonable opportunity to take appropriate action before the deadline for objecting to dischargeability passed"). In *Smith*, two creditors were entirely omitted from the bankruptcy schedules and neither was sent notice of the bankruptcy petition. That is not the case here; the evidence clearly establishes that Miller was listed as a creditor on the bankruptcy schedules and creditor matrix. Therefore, the focus of our analysis is whether service of notice to Stilp, Miller's attorney, constituted proper and timely notice that would be imputed to Miller.

When an attorney is representing a creditor in order to collect a debt outside of the bankruptcy, notice of the bankruptcy petition sent to that attorney by the debtor can be imputed to the creditor. *See, i.e., In re Schicke*, 290 B.R. 792, 803 (10th Cir. B.A.P. 2003); *In re Linzer*, 264 B.R. 243, 248 (Bankr. E.D.N.Y. 2001). For example, in *Linzer*, notice was imputed to a creditor whose attorney was actively engaged in the creditor's claim against the debtor that was ongoing at the time of

debtor's filing. 264 B.R. 243. It is undisputed that Stilp's office received official bankruptcy notice shortly after Herman filed his bankruptcy petition. To determine whether the notice delivered to Stilp's office was proper and can be imputed to Miller, there must be a sufficient "*nexus* between the creditor's retention of an attorney and the creditor's claim against the debtor." *In re Najjar*, No. 06-10895, 2007 WL 1395399 at *4 (Bankr. S.D.N.Y. May 11, 2007) (citing *In re San Miguel Sandoval*, 327 B.R. 600, 602 (E.D. Mich. 1980) (emphasis in original).

Guidance for determining a sufficient nexus between a creditor and his attorney can be found in the detailed analysis by the Tenth Circuit Bankruptcy Appellate Panel in *Schicke*. In *Schicke*, a creditor sought to reopen a closed Chapter 7 bankruptcy case so that he could file a nondischargeability complaint against the debtor. 290 B.R. at 792. The court found that the "debtor may schedule a creditor in care of its attorney … provided that the attorney is the creditor's agent in matters related to the Chapter 7 case." *Id.* at 801. The court then looked at the totality of the circumstances and the relationship between the creditor and the attorney to decide whether agency existed between them. *Id.* at 804. Although the attorney was not specifically acquired by the creditor for the bankruptcy case, the court noted that the attorney represented the creditor in an action against the debtor in a prior proceeding related to the bankruptcy and there was no indication that the agency relationship had terminated. *Id.* Moreover, the court emphasized that proper notice does not need to be the "best" possible notice, but rather notice that is "appropriate" and "reasonably calculated to apprise creditors of the case." *Id.* at 803 (internal

quotations omitted). The court ultimately held that service to the creditor's attorney was timely and it was reasonable for the debtor to assume notice to the attorney would properly apprise the debtor of the case. *Id.* at 806.

Here, the record demonstrates a sufficient nexus between Stilp and Miller at the time Herman's bankruptcy petition was filed. Numerous hearings were held before the bankruptcy court to provide evidence of the relationship between Stilp and Miller including briefs, oral testimony, and adversary complaints. Stilp testified that he began representing Miller in 2005 regarding a dispute with Herman concerning the construction of Miller's home. After years of litigation in state and federal courts, the district court dismissed Miller's case against Herman in May 2010 for lack of jurisdiction, noting that Miller was free to refile the case in the proper state forum. Stilp testified that he then wrote a letter to Miller informing him of the district court decision. Although Stilp recommended that Miller drop the case, Stilp's testimony reveals that Miller did not agree to terminate the case and that "he [Miller] was going to think about it and what he wanted to do." Although there was no direct communication between Stilp and Miller in June and July, Stilp's firm "may have sent some bills to Mr. Miller." Then in August 2010, Miller contacted Stilp to inform him that he in fact wanted to refile the case against Herman. After learning that the claim against Herman could no longer be pursued due to bankruptcy protection, Stilp proceeded with an action against Pella Corporation on Miller's behalf. The Pella windows were the same windows at the heart of Miller's action against Herman: the same action he wishes to pursue if the bankruptcy case was reopened. The bankruptcy judge

considered all of this evidence in determining that a sufficient nexus existed between Miller and Stilp so that the notice sent to Stilp could be imputed to Miller.

It is clear from Stilp's testimony that he had neither terminated his representation of Miller in May 2010 nor did he indicate that he would be closing the case or refusing future representation of Miller. Instead, Miller stated he needed time to consider whether to refile; an action he ultimately said he wished to pursue. Mere weeks elapsed between the time Miller's federal case against Herman was dismissed and the time Herman filed a bankruptcy petition. Although Stilp was not specifically representing Miller in the bankruptcy case, he was representing Miller in the ongoing claim against Herman related to the bankruptcy and the new action against Pella Corporation regarding the same windows. Under these circumstances, it was reasonable for Herman to believe Stilp was still representing Miller at the time he filed for bankruptcy. These facts led the bankruptcy court to properly hold that Herman "established that Mr. Stilp continued to represent Mr. Miller at the time the notice was sent." The bankruptcy court's finding is in accordance with the presented facts and oral testimony and "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." Fed. Bankr. P. 8013.

We conclude that timely notice was properly delivered to Stilp and that a sufficient nexus existed between Stilp and Miller at the time the bankruptcy petition was filed. There was a sufficient nexus between Miller and his attorney for the notice to Stilp to be imputed to Miller as constructive notice. As

the lower court opined, while the circumstances of this case are unfortunate, no sufficient grounds to reopen the case have been presented. Hence, the bankruptcy court did not abuse its discretion in denying Miller's motion to reopen.

### III.  CONCLUSION

For the reasons stated above, the decision of the district court is AFFIRMED.